## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

Arian Biba,

        Plaintiff,

vs.                                   Case No.  3:06-cv-60-J-32MCR

U.S. Department of Homeland Security, U.S.
Citizenship and Immigration Services, an
agency of the United States; David Neufield,
US CIS District Director, Miami, Florida; and
Louise Germain, Officer in Charge,
Jacksonville, Florida,

        Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's Petition for Review of a Final

Administrative US CIS Denial of Naturalization and Request for a De Novo Hearing on

the Naturalization Application (Doc. 1) filed January 20, 2006.  Defendants filed a

response (Doc. 3) on March 27, 2006.  The Court held an evidentiary hearing on May 5,

2006.  Accordingly, the matter is now ripe for judicial review.

## I.  INTRODUCTION

Plaintiff, a twenty-seven (27) year old citizen of Albania, entered the United

States as a diversity immigrant on December 14, 1999.  (Doc. 1, p. 4).  On November 8,

2004, Plaintiff sought naturalization by filing an application for naturalization (N-400)

---

[1] Any party may file and serve specific, written objections hereto within TEN (10) DAYS after service
of this Report and Recommendation.  Failure to do so shall bar the party from a de novo determination by a
district judge of an issue covered herein and from attacking factual findings on appeal.  See 28 U.S.C.
§636(b)(1); Fed.R.Civ.P. 72(a), 6(a) and (e); Local Rules 6.02(a) and 4.20, United States District Court for the
Middle District of Florida.

with the United States Citizenship and Immigration Services ("CIS").  Id.  In the

application, Plaintiff disclosed that he had been arrested twice since living in the United

States.  On August 26, 2000, he was arrested for soliciting a prostitute, and was

adjudicated guilty.  (Doc. 1, Ex. A, p. 9).   Plaintiff was arrested again on September 22,

2002, for simple battery and resisting an officer without violence to his person, after

getting into a fight with another man at an after hours bar.   (Doc. 3, p. 2).   Although

Plaintiff was arrested for simple battery, he was only charged with fighting, which is a

violation of a municipal offense and a lesser offense than simple battery.  (Doc. 1, p. 4).

On October 23, 2002, Plaintiff plead *nolo contendere* to fighting and adjudication was

withheld.  Id.  The charge of resisting officer without violence to his person was *nolle*

*prosequied.*  (Doc. 3, p. 2).

On April 6, 2005, and again on June 16, 2005, Plaintiff appeared before a CIS

examiner and resubmitted the documentation pertaining to his arrests.  (Doc. 1, pp. 4-

5).  On June 24, 2005, the CIS denied Plaintiff's petition for naturalization pursuant to 8

C.F.R. § 316.10 (b)(3)(iii) because it found Plaintiff failed to establish that he possessed

the requisite good moral character for the five (5) years preceding his application for

naturalization through the present.  (Doc. 1, Ex. D).  The CIS based its decision on

Plaintiff's two prior arrests.  Id.

Plaintiff filed a request for rehearing and on October 20, 2005, the CIS held a

hearing on the appeal.[2]   (Doc. 1, p. 5).  During the hearing, the CIS examiner inquired

into the circumstances leading up to Plaintiff's arrest for fighting.  Id.  Plaintiff admitted

---

[2]Plaintiff and his counsel were both present at the hearing.

under oath that had gotten into a fight with another man at a bar, but that he was acting in self defense when he punched the man in the face.  Id.  Plaintiff signed an affidavit stating the same.  (Doc. 3, Ex. 6).

On October 25, 2005, the CIS issued a final administrative decision affirming the denial of Plaintiff's application for naturalization.   (Doc. 1, Ex. F).   In its written decision, the CIS stated it was denying Plaintiff's application for naturalization because of the events leading up to and surrounding Plaintiff's second arrest for fighting.  (Doc. 3, Ex. 7).  The Plaintiff is now seeking *de novo* review of the denial of his naturalization application and a declaratory judgment for naturalization.  (Doc. 1, p. 11).

## II.  EVIDENCE PRESENTED AT HEARING

This Court held an evidentiary hearing on May 5, 2006.  Throughout the course of the hearing, Plaintiff offered testimony regarding his good moral character and the extenuating circumstances surrounding his two arrests.  Plaintiff first testified regarding the events leading up to his arrest for solicitation of a prostitute.  He stated that, approximately six months after moving to this country, he was driving with a friend, with whom he worked with at a warehouse, and they noticed a prostitute.  He stated that he did not think anything unusual about it because he would frequently see prostitutes in Eastern Europe.  His friend stopped to speak with the woman but Plaintiff testified that he did not speak English and never spoke with the woman himself.  He said that he saw his friend give the woman money and the next thing he knew, the police were surrounding his vehicle and Plaintiff was arrested.

Plaintiff also testified about the night he was arrested for fighting.  He stated that he had been working that night and after work he went to a bar to have a few drinks. He testified that he accidentally bumped into another man who was playing pool and the man got upset with him and they exchanged words.  He also testified that the man swung a pool stick at him and Plaintiff hit the man in the face in an effort to protect himself.  Plaintiff did not remember much about the man's appearance, although he did admit that he was smaller than Plaintiff.

Plaintiff further testified that he left the bar after he hit the man.  He stated that he was not aware that a police officer was following him.  He heard someone say "stop; where are you going," but he testified that he believed it was one of the man's friends following him and therefore, he did not stop.  He next testified that he heard a gun click and when he turned around, it was at that time that he realized an officer was following him.

Detective David Oliver testified for the Defendants and stated that he did not actually see Plaintiff hit the other man, nor did he know whether the other man had first swung his pool stick at Plaintiff.  Detective Oliver said that he was told there was an altercation in the bar and by the time he arrived he only witnessed Plaintiff threatening the victim by holding a pool ball in his hand like he was going to hit him.  Detective Oliver further testified that he attempted to stop Plaintiff before he left the establishment and that Plaintiff was trying to evade him.  He believed Plaintiff saw him but refused to stop.  Finally, Detective Oliver stated that when Plaintiff finally turned around to face

Detective Oliver, he assumed a fighting stance and thus, Detective Oliver hit Plaintiff in the head with the back of his fist and put him on the ground.

Plaintiff, and several witnesses testifying on behalf of Plaintiff, offered evidence as to Plaintiff's moral character.  Plaintiff stated that he has been employed the entire time he has lived in the United States.  In fact, he has consistently worked two jobs in order to pay his bills and support his family.   He attended FCCJ for several semesters to learn English.  He lives with his Aunt and Uncle and tries to help the family any way he can.  His wife lives in Albania and he would very much like her to come to the United States so that they can start a family.

Each of Plaintiff's witnesses testified that he is a good person who is trustworthy, helpful, and has good morals.  Plaintiff's cousin, the daughter of the Aunt and Uncle with whom Plaintiff lives, testified that after Plaintiff was arrested for fighting, Plaintiff's uncle immediately sat him down and asked him about the circumstances leading to his arrest. She further testified that Plaintiff was candid with them when he told them what had happened and that he explained he was acting in self defense.  Plaintiff testified that he felt very bad about hitting the other man.

Plaintiff's other witnesses included two of his friends and his current boss.   Their testimony established that Plaintiff is friendly, hardworking, responsible and not typically aggressive or violent.  His boss trusts him with money and making important decisions. At one point his boss referred to Plaintiff as being "his eyes."  His friends and relatives trust him with their kids.  They all testified that Plaintiff goes out of his way to help people.  In fact, one of his friends, who presently has a broken clavicle, testified that

Plaintiff has offered to drive him to work, pick up groceries for him, and pick his daughter up from school.[3]   Lastly, the witnesses testified that Plaintiff attends church and is very involved with friends and family.

### III. ANALYSIS

Plaintiff seeks *de novo* review of the CIS order denying his application for naturalization.  (Doc. 1).   He alleges that the CIS failed to consider his extenuating circumstances pertaining to his two arrests and consequently, wrongfully determined that he lacks good moral character.  Id.  Defendants argue that Plaintiff failed to establish the requisite good moral character and thus is not eligible for naturalization. (Doc. 3).

### A. Jurisdiction

An applicant, who seeks to become a  United States citizen and whose application has been denied by the CIS, may appeal the denial of his application to the United States District Court for the district in which he resides.   See 8 U.S.C. § 1421(c). Because Plaintiff resides in the Middle District of Florida and because Plaintiff was denied naturalization under 8 U.S.C. § 1147(a), this Court has jurisdiction.[4]   As such, this Court must conduct a *de novo* review of the facts and conclusions of law in this case.  Id.

---

[3]This witness was rather free-spoken on the stand and testified that Plaintiff was one of his only friends who had offered such assistance and in fact, the witness's own girlfriend had not even offered as much.  The witness seemed truly impressed with Plaintiff's generosity and friendship.

[4] On April 3, 2006, The District Judge assigned to this matter referred it to the undersigned for a report and recommendation regarding an appropriate resolution of this case.  (Doc. 4).

**B.  Standards of Law Regarding Applications for Naturalization**

An applicant who seeks United States citizenship and all of its privileges has the burden of proving, by a preponderance of the evidence,  that he has meet every prerequisite to citizenship.  Berenyi v. District Director, INS, 385 U.S. 630, 637, 87 S.Ct. 666, 671 (1967); see also  8 C.F.R.  §316.2 (2005).    Plaintiff bears this burden because naturalization is a privilege and not a right.   Tutun v. United States, 270 U.S. 568, 578, 46 S.Ct. 425, 427 (1926).   Doubts regarding Plaintiff's eligibility for naturalization should be resolved in favor of the United States and against the Plaintiff. Berenyi, 385 U.S. at 637.

To be eligible for citizenship, an applicant must demonstrate that he: (1) was lawfully admitted to the United States as a permanent resident; (2) has resided continuously, and has been physically present, in the United States for the required statutory period; and (3) is a person of good moral character and has been for at least the five years preceding the filing of his naturalization application.  See 8 U.S.C. §§ 1427, 1429; see also 8 C.F.R.  §316.2 (2005); U.S. v. Nunez-Garcia, 262 F. Supp. 2d 1073, 1080 (C.D. Cal. 2003).   Here, Defendants admit that Plaintiff meets the first two qualifications.  They assert, however, that Plaintiff has failed to establish that he has been a person of good moral character for the relevant statutory period.

**C.  Good Moral Character**

As stated above, an applicant for United States citizenship must demonstrate that he is a person of good moral character and has been for a period beginning five

years prior to the date he filed his application.   8 U.S.C. § 1427(a)(3); <u>see</u> also 8 C.F.R. §316.10 (a)(1).  Courts agree that what constitutes "good moral character" is not a term which can be defined or determined in any precise fashion, as the standards may vary from generation to generation.  <u>See</u> <u>e.g.</u> <u>Petition of De Leo</u>, 75 F. Supp 896, 900 (D.C. PA. 1948) ("What is good moral character within the meaning of the statute is not easy of determination in all cases.  The standard may vary from one generation to the other.").  Consequently, good moral character is analyzed on a case by case basis, and the Court should take into account "standards of the average citizen in the community of residence."  8 C.F.R. §316.10 (a)(2).

Title Eight (8) of the Federal Regulations defines good moral character in the negative in that it defines acts which demonstrate an applicant lacks good moral character.  For instance, if an applicant has been convicted of murder, an aggravated felony, or a crime that involves moral turpitude, then the court must find that the applicant lacks good moral character.  <u>See</u> 8 C.F.R. §316.10(b)(1)-(b)(2).  The CIS examiners relied on 8 C.F.R. §316.10(b)(3) in concluding that Plaintiff lacks good moral character.  This section specifically states:

> Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant:
>
> (iii) Committed unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts. . . .

8 C.F.R.§ 316.10(b)(3)(iii) (2005).  The CIS examiners testified, during the evidentiary hearing, that because the Plaintiff was arrested twice within the relevant statutory period, they believed he should be denied naturalization pursuant to this section.

After considering the evidence admitted during the evidentiary hearing, this Court is of the opinion that Plaintiff has met his burden in establishing that he is a person of good moral character and has been during the relevant statutory period.   In particular, this Court found that Plaintiff's testimony was credible, as was the testimony of each of his witnesses.  The Court found Plaintiff sincere and did not believe that he intended to deceive the Court.  See United States v. Hovsepian, 422 F.3d 883, 885-88 (9th Cir. 2005) (stating that the district court was entitled to view appellees' testimony, and that of their witnesses, as credible and when the district court rests its findings on an assessment of credibility, the Court owes greater deference to the findings because they are findings of fact, and thus, the findings will not be set aside unless clearly erroneous).

Moreover, Plaintiff established that there were extenuating circumstances which lead to both of his arrests.  Namely, with regard to Plaintiff's arrest for soliciting a prostitute, Plaintiff never interacted with the prostitute and did not even speak English at the time he was arrested.  Rather, his friend approached and conversed with the prostitute.  Moreover, Plaintiff testified that he was not aware of what was actually happening until he saw his friend give the woman money.  The Court found Plaintiff's testimony credible and notably, the Defendants did not offer any evidence refuting these facts.

Plaintiff's testimony regarding the bar fight established that he was acting to protect himself when he punched another man in the face.  Plaintiff stated that the altercation started when Plaintiff accidentally bumped the man while walking.  He then

-9-

stated that the man became upset and they exchanged argumentative words.  Plaintiff

stated that the man swung at him with a pool stick and then Plaintiff punched him in the

face in self defense.  Plaintiff further stated that he tried to leave the bar immediately

after the fight and he was not aware that a police officer was chasing him.  In fact, he

testified that there were two police officers at the bar that night, one who was in civilian

clothes and another who was in uniform.  He stated that he believed the man in the

civilian clothes was one of the victim's friends chasing after him.[5]   It was not until right

after he turned around to face the man that he noticed it was an officer following him.

Again, the Court finds Plaintiff's version of the facts credible.  In fact, Detective

Oliver's statement, that Plaintiff turned around and assumed a fighting stance after

being chased for a few seconds, is consistent with Plaintiff's account that he was being

chased by the victim's friends after a bar fight.  Significantly, Detective Oliver testified

that he did not witness the fight between Plaintiff and the victim and thus, he did not see

who started the fight, nor was he able to refute that Plaintiff was acting in self defense.[6]

Additionally, although Detective Oliver testified that he believes Plaintiff saw him before

Detective Oliver attempted to detain him, such a belief is speculative at best.   Plaintiff

testified that he did not see Detective Oliver until he heard a gun clicking, at which time

he turned around.  Finally, while not conclusive, the fact that the charges against

---

[5]Detective Oliver testified he was wearing his uniform but that there was an off-duty police officer from out of town who was also trying to stop Plaintiff.  Detective Oliver stated that the off-duty police officer was wearing civilian clothes.   This fact sheds light on Plaintiff's testimony that he believed he was being followed by one of the victim's friends.

[6]Notably, Defendants failed to offer any evidence by the victim, or anyone else, rebutting Plaintiff's account of the incident.

Plaintiff for resisting arrest without violence were dropped also weighs in favor of Plaintiff's credibility.[7]

Although Plaintiff's behavior during the bar fight was less than ideal, this Court finds that Plaintiff demonstrated extenuating circumstances in that he was acting in self defense.  Moreover, the Court believes the fact that Plaintiff was involved in a bar fight and attempted to protect himself, should not bar him from establishing that he possesses good moral character, especially in light of all of the positive character testimony shared by Plaintiff's friends and family.  Plaintiff's behavior may have been immature and less than civilized, however, the Court does not find that  under the circumstances of this case, such behavior is typical of Plaintiff.  Nor is it indicative of a man who is not "attached to the principles of the Constitution of the United States." See e.g., Girouard v. United States, 328 U.S. 61, 66 S.Ct. 826, 827 (1946) (stating that an alien applying for U.S. citizenship must show that he behaved as a man of "good moral character, attached to the principles of the Constitution of the United States[8], and well disposed to the good order and happiness of the same").  Finally, the Court concludes that persons in the city of Jacksonville, the state of Florida, or even the

---

[7]In finding that Plaintiff's version of the story is credible, this Court is by no means opining that Detective Oliver's testimony is not.  Rather, I find that Detective Oliver's testimony regarding whether Plaintiff saw him was speculative.

[8]It is well known that when the Constitution was founded, gentlemen who were committed to the principles of the Constitution, frequently brawled or even dueled with one another to solve their differences.  While this may have been a perfectly acceptable way of solving differences in another generation, the Court notes that it does not now condone such behavior.  It does, however, find that in this case -- a case involving a man who acts in self defense but otherwise demonstrates he has good moral character -- such behavior does not by itself demonstrate a lack of integrity or morality.

United States as a whole would hardly be outraged by such behavior in our current

generation.  See U.S. v. Francioso, 164 F.2d 163 (2d Cir. 1947) (asking whether the

naturalization applicant's behavior, under the generally accepted moral conventions at

the current time, would outrage the moral feelings in the country).

## IV.  **CONCLUSION**

Because Plaintiff has established extenuating circumstances regarding his two

arrests and because the Court believes Plaintiff's testimony, and that of his witnesses,

was honest and forthcoming, this Court finds that Plaintiff has met his burden of

establishing that he is a man of good moral character and has been during the relevant

statutory period.  See e.g., Jalloh v. Dept. of Homeland Security, No. Civ. A. 04-11403-

DPW, 2005 WL 591246 (D. MA March 11, 2005) (remanding the case and holding that

the Department of Homeland Security wrongfully denied alien's application for

naturalization because applicant established extenuating circumstances surrounding his

"unlawful acts" and demonstrated good moral character).

Accordingly, after due consideration, it is

**RECOMMENDED**:

The CIS's denial of Plaintiff's application for naturalization be **REVERSED**  and

the case be **REMANDED** to the CIS with instructions to approve Plaintiff's application.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this __15th__ day of

May, 2006.


_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE


Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record